UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HDI-GERLING INDUSTRIE VERSICHERUN AG,<br><br>          Petitioner,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>          Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:14-cv-04145-VSB<br>)<br>)<br>)<br>)<br>) |

**FORD MOTOR COMPANY'S MEMORANDUM OF LAW IN RESPONSE TO HDI-GERLING'S MOTION TO CONFIRM ARBITRATION AWARD**

Respondent Ford Motor Company ("Ford"), by counsel, pursuant to the Court's order of August 27, 2014 (Docket No. 21), submits the following response to HDI-Gerling Industrie Versicherung AG's ("Gerling") Motion to Confirm Arbitration Award:

**Introduction**

Gerling has petitioned this Court to confirm a preliminary draft of an interim arbitration award. The arbitration panel in the underlying proceeding still has before it related matters. Because this matter is not yet ripe for adjudication, this Court lacks subject matter jurisdiction and should dismiss the petition.

Assuming this Court has jurisdiction over this matter, the petition should still be dismissed. In filing its Petition, Gerling invoked the authority of the Federal Arbitration Act ("FAA") at 9 U.S.C. § 9. Under the FAA, an arbitration award can only be confirmed if the parties to the arbitration have agreed to confirmation in their arbitration agreement. Ford and Gerling have no such agreement. Gerling now contends that this proceeding is governed by the

1

Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which the Second Circuit Court of Appeals has held preempts the consent-to-confirmation requirement in § 9. Assuming for the sake of argument that Gerling could have instigated this proceeding under 9 U.S.C. § 207 and avoided the confirmation requirement, which Ford disputes, Gerling did not do so and has not sought leave to amend its petition. Pursuant to 9 U.S.C. § 9, which Gerling invoked in filing the petition, the petition should be dismissed.

Without waiving its position that the Court lacks subject matter jurisdiction or that the award cannot be confirmed, Ford respectfully requests that the award be vacated on the ground that the arbitration panel committed a manifest disregard for the law. The panel determined that the operative provision in the insurance agreements at issue is ambiguous. It cited to controlling Michigan law which provides that in the event of ambiguity and where there is not clear evidence of the parties' mutual intent, the ambiguity must be construed in favor of insurability. Nevertheless, although the panel did not find any mutual intent excluding the claims at issue from coverage, the panel ignored Michigan law and construed the insurance contracts in favor of Gerling.

**Factual Background**

On November 19, 2010, Gerling filed an arbitration demand against Ford seeking a declaratory judgment that Gerling was not required to indemnify Ford under a series of "aggregate stop loss" insurance policies for certain product liability losses sustained by Ford. Gerling named as its arbitrator Martin Haber, Esq. Ford in turn named Prof. Kenneth Abraham. The Hon. Abraham Sofaer, was chosen as the neutral arbitrator. On January 14, 2011, Ford filed

its counter-claim in which it sought declaratory relief that its claims were covered under those same policies and an award of the amounts owed under the policies as a result.

After discovery, substantive motions, a hearing, and a trial, on May 25, 2014, the parties received from Mr. Sofaer, via e-mail, a document styled a Partial Final Award, which was transmitted in Microsoft Word format and was unsigned.  On or around June 2, 2014, the parties received by mail a signed version of that same award (the "Award"). See Docket No. 3, Exhibit A, filed Under Seal with the Court.  Gerling seeks to confirm the June 2, 2014 Award.

Although styled a Partial Final Award, the June 2, 2014 Award is not a final award because (1) it has been superceded and (2) the issues yet to be resolved in the arbitration are so intertwined with the issues considered in the Award that it is not separate and independent.  After the parties briefed their disputes as to what the Award meant, on June 21, 2014, the arbitration panel issued another order which clarifies the Award and makes clear that it does not fully resolve the parties' dispute. (*See* June 21 Procedural Order, attached hereto as Exhibit 1.)

That June 21 Procedural Order states in relevant part:

> The Tribunal's Partial Final Award does explicitly decide the issue of whether the change in the language of the 1999 policy between the parties reflected a change in the parties' intentions under the earlier versions of the policy at issue, stating in the Award (p. 21): that the changes made "cannot reasonably be read in isolation as having changed the parties' intentions."  This determination by the Tribunal is consistent with Ford's position on the issue addressed, though the Tribunal has not explicitly determined the effect of this decision on Ford's right to coverage for Bronco II Batch claims under the 1999 policy.  The Tribunal is prepared to decide this issue in the event the parties are unable to resolve it.  The Tribunal has not addressed whether Ford is entitled to coverage "excess" of the amounts of coverage in the underlying Batch policies for claims under the Active Restraint and Fuel System Batches even if the underlying amounts have not in fact actually been paid.  This too is an issue not explicitly addressed in the Tribunal's Partial Final Award, and the Tribunal is prepared to hear and decide the matter in the event the parties are unable to resolve it.

Exhibit 1 at 2.

Subsequently, on July 9, 2014, the panel issued a new version of the Partial Final Award. This new version, attached hereto as Exhibit 2, varied significantly from the June 2, 2014 Award. It contained additional paragraphs at the beginning and end, and there are word changes throughout. Among other things, the July 9 version of the Partial Final Award contains the following enumerated summary of the panel's findings, which is entirely missing from the June 2, 2014 Award:

PARTIAL FINAL AWARD

1. For the reasons stated in this Award, and on the basis of the findings and conclusions reached therein, Claimant HDI-Gerling Industrie Versicherung, A.G. is hereby awarded the following declaratory relief: "The Tribunal, on the basis of the findings and reasons provided below, unanimously upholds Gerling's construction of Exclusion L of the insurance policies at issue, and by this award declares as Gerling has requested that Ford's demand for coverage of Occurrences that were part of its five declared Batches is unsupported by the intent of the parties in agreeing to the policies at issue as established by the policies' language, negotiating history, and application in practice."

2. For the same reasons described in Paragraph 1 above, and on the basis of the same findings and conclusions, the Undersigned Arbitrators dismiss all of Respondents' counterclaims including all counterclaims for monetary damages inconsistent with the declaratory relief awarded in Paragraph 1 above, and deny all defenses inconsistent with such relief.

3. The Undersigned Arbitrators will rule separately and issue a Final Award if required on the further issues on the merits of the claims, counterclaims, or defenses that have or may be raised but which are not resolved by this PARTIAL FINAL AWARD. At this time open issues include whether the Tribunal has ruled in Ford's favor on the effect of the change made to the 1999 policy with regard to the Bronco II Batch claims, and whether the Tribunal's ruling requires

4

> that coverage be "excess," not only of the amounts of insurance provided by the underlying Batch policies, but of amounts "actually paid" by Ford's Batch insurers. In addition, the Tribunal will rule on Claimant's request to recover arbitration costs, counsel fees, and expenses. The Undersigned Arbitrators retain jurisdiction for all these purposes. Therefore, within 14 days from the date of the transmittal of this Award to the parties, Claimant is to file it costs and fees submission. Within 14 days from the transmittal of the Claimant's submission, Respondent is to file its response.

Exhibit 2 at 27-28.  This language is self-described as the actual "award" in the Partial Final Award, yet it is completely absent from the version Gerling seeks to confirm.

Even the July 9 version has been superceded.  The July 9 version contains the following on page 28: "We hereby certify that, for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Partial Final Award was made in New York, NY, USA."  This language on its face appears to support Gerling's contention that venue is proper in this District.  Yet, even this finding was not final. On August 18, 2014, the arbitration panel and the parties convened for an additional hearing. The arbitration panel opened the proceeding by announcing that by unanimous decision, the arbitrators had, on Ford's motion, reversed course and deemed the situs of the arbitration to be Michigan:

> We've talked it over.  And we'll go on the record right now and tell you that the situs is Michigan.  That was our understanding unanimously from the outset.  We felt that Ford had made a gesture on behalf of everyone to give us the convenience of having the hearing in New York.  And that was -- it was solely for the purpose of the hearing. And we all three unanimously feel that way and wanted to make this clear right now.

Aug. 18, 2014 Hearing Tr., attached hereto as Exhibit 3, at 1786:14-1787:2.

5

Moreover, the issues regarding the Bronco II, Active Restraints, and Rear Impact Fuel Systems Batches that grew out of the parties' dispute as to what the Award meant, have not been finally determined. The arbitration panel has advised the parties via a preliminary ruling that it intends to rule for Ford on the Bronco II batch claims and for Gerling on the Active Belt and Fuel Systems batch claims. *See* Order Concerning Preparation for Final Award, Aug. 26, 2014, attached hereto as Exhibit 4. The parties have subsequently submitted two additional rounds of briefing on damages and are awaiting a Final Award.

On September 16, 2014 the parties were informed by the ICDR that: "The ICDR has received notice from the tribunal that no additional evidence is to be submitted. Therefore the hearings are declared closed as of September 9, 2014 and the tribunal will endeavor to render the Final Award within 90 days, which is the timeframe agreed upon [sic] the parties." Letter from C. Preda to A. Sofaer, et als., Sep. 16, 2014, attached hereto as Exhibit 5.

Ford expects these issues, which are inextricably intertwined with the matters addressed in the Award, will be disposed of by early December. Until then, there is no award final or independent enough to be confirmed.

## Argument

### I.     Gerling's Motion Is Not Ripe Because The Award It Seeks To Confirm Is Not Final

Gerling's petition is fundamentally flawed because the June 2, 2014 Award it seeks to confirm is not a final award. Not only has it been superseded by later awards, the arbitration panel still has before it related matters. Because this matter is not yet ripe for adjudication, the Court lacks subject matter jurisdiction and should dismiss the petition. *Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506 (2d Cir. 2014) ("To be justiciable, a cause of action must be ripe--it must present a real, substantial controversy, not a mere hypothetical question.")

Gerling has petitioned this court to confirm the Award pursuant to 9 U.S.C. § 9 of the Federal Arbitration Act ("FAA"), but the "FAA only permits a federal court to confirm an arbitration award that is final." *Banco De Seguros Del Estado v. Mut. Marine Offices, Inc.*, 230 F. Supp. 2d 362, 368 (S.D.N.Y. 2002). "An arbitrator's interim ruling is not a final award if it 'does not purport to resolve finally the issues submitted to the arbitrators.'" *Id*. (*quoting E.B. Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980)). To be final, an award must "finally and definitely dispose[] of a separate independent claim." *Id*. (*quoting Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986)).

This Court has refused to confirm an interim award, such as the June 2, 2014 Award, where the issues disposed of in the interim award were "necessarily intertwined" with the remaining issues. *Ins. Co. of North Am. v. Public Service Mut. Ins. Co.*, No. 1:08-cv07003, 2008 U.S. Dist. LEXIS 101788 at *17, 21 (S.D.N.Y. Dec. 12, 2008) ("Summary Judgment Order is not a 'confirmable' final award in part because the Original Panel had already agreed to entertain a motion for reconsideration at the time of [arbitrator's] withdrawal."). Here, after the Parties disputed the meaning of the June 2, 2014 Award, the arbitration panel issued rulings that superseded it. Moreover, the matters covered by the June 2, 2014 Award are "necessarily intertwined" with the issues still before the panel, namely, Ford's recovery on the Bronco II claims.[1]

Indeed, Gerling even conceded in a June 9, 2014 letter to the arbitration panel that the petition it filed in this Court was premature.

---

[1] Even after the Tribunal had clarified the Award to say that Ford won the argument on the meaning of 1999 changes and that coverage for Bronco II claims was necessarily still at issue, Gerling represented to this Court at the August 27, 2014 hearing that it did not believe Ford had won anything under the Award. *See* Hearing Tr. (Aug. 27, 2014) at 12:7-9 ("First of all, I just want for the record: We don't agree with Mr. Redd's statement that Ford prevailed on any provision or any claim, but that is neither here nor there."). Thus Gerling seeks to confirm an Award different from panel's ruling. The Award cannot be ripe for confirmation until reduced to a Final Award whose meaning is beyond dispute.

> We are writing to inform the Panel that, out of an abundance of caution, today we filed a motion in the Southern District of New York to confirm the Partial Final Award that is the reasoned opinion of the Panel.  We have not yet served the motion.
>
> *We understand that the short form Partial Final Order has not been executed and that Ford may be proposing revisions.  When that is finalized, we will move to confirm that as well*.  If the Panel or Ford have any questions, please let us know.

E-mail from J. Byrne, June 9, 2014, attached hereto as Exhibit 6 (emphasis added).  Gerling has not, however, sought leave to amend it petition.

An arbitration award that is not the final award is subject to judicial review only if the party seeking to invoke the Court's jurisdiction can show that it disposes of all submitted issues, which Gerling cannot.  *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) ("Where, as here, arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable."); *Dealer Computer Servs. v. Dub Herring Ford*, No. 09-1848, 2010 U.S. App. LEXIS 21167 at **20-21 (6th Cir. Oct. 14, 2010) ("The ripeness inquiry is triggered by the fact that the instant interlocutory arbitration award, like the one at issue in our earlier ruling, is not a final arbitration award."); *Bailey Shipping Ltd. v. Am. Bureau of Shipping*, No. 1:12-cv-5959 , 2014 U.S. Dist. LEXIS 42530 at *8 (S.D.N.Y. Mar. 28, 2014) ("[T]his Court lacks jurisdiction to consider Bailey's petition. As relevant here, courts have jurisdiction to review those arbitral awards that are 'final' and 'definite.'").

Because Gerling's petition is not ripe for confirmation, Ford respectfully requests that the petition be dismissed.

### II.     The Court Lacks Authority To Confirm The Award Because The Parties Did Not Agree To Confirmation.

Gerling filed its petition pursuant to 9 U.S.C. § 9, but that code provision does not authorize the confirmation of an arbitral award in federal court absent an agreement by the

8

parties in their arbitration agreement that an arbitration award can be confirmed. *Varley v. Tarrytown Assocs.*, Inc., 477 F.2d 208, 210 (2d Cir. 1973) ("The Act provides that confirmation of an arbitration award is appropriate only where the parties in their agreement have agreed that a judgment of the court shall be entered upon the award."); *Franklin Hamilton, LLC v. Creative Ins. Underwriters, Inc.*, No. 1:08-cv-7449, 2008 U.S. Dist. LEXIS 92980 at *5 (S.D.N.Y. Nov. 6, 2008) ("As in *Varley*, there is no express consent to the entry of judgment upon the award."); *Kaystar Tarim Urunleri Sanayi Ve Ticaret Ltd., v. Spring Tree Corp.*, No. 96-cv-9392, 1997 U.S. Dist. LEXIS 4228 at *9 (S.D.N.Y. Apr. 7, 1997) ("[F]or a federal court to have jurisdiction to confirm an arbitration award and enter judgment, it is not sufficient that the parties have merely agreed to settle their disputes by arbitration."). The arbitration clause contained in the insurance policies at issue here does not contain the required agreement.

Ford expects Gerling to argue that in *Idea Nuova, Inc. v. GM Licensing Grp., Inc.*, 617 F.3d 177 (2d Cir. 2010), the Second Circuit held that "a contract provision providing for arbitration to be conducted pursuant to AAA rules" as well as an "agreement that consents to AAA arbitration without referencing AAA rules" consents to judicial confirmation of the award. Id. at 181. This holding, however, is distinguishable for the reasons explained herein.

The version of the AAA Commercial Rules in effect when the first policy was signed contains a "Standard Arbitration Clause. *See* 1993 AAA Commercial Arbitration Rules, attached hereto as Exhibit 7, at 3. That clause reads in relevant part: "[A]nd judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." *Id*. This simple phrase was readily available to the parties in 1995, yet they chose not to adopt it. Instead they chose to provide that the award would be merely a *defense* to any subsequent proceedings. *E.g.*, Docket No. 3, Exhibit C, filed Under Seal with the Court, Policy No. 99/1639/01 at 9,

9

Condition K. ("the decision of the majority … shall be final and binding on the parties thereto, and such decision shall be a complete defense to any attempted appeal or litigation of such decision …").

Gerling has also argued that the limitation of 9 U.S.C. § 9 does not apply to this proceeding because Gerling is an international party, thus bringing the arbitration under the auspices of 9 U.S.C. § 207. Gerling cites *Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433 (2d. Cir. 2004), in which the Court of Appeals held that § 9 and § 207 were in conflict and that, "§ 207 preempts § 9's consent-to-confirmation requirement in cases arising under the Convention." *Id*. *Phoenix* is inapposite, however, because, as explained below, this case does not "arise under the Convention." Assuming for the sake of argument that Gerling could have instigated this proceeding under 9 U.S.C. § 207 and avoided the consent-to-confirmation requirement, Gerling did not do so. Instead, Gerling expressly invoked this Court's jurisdiction under 9 U.S.C. § 9. Gerling elected its course and ought not now be allowed to change course when confronted with a fatal flaw in its petition.

In any event, the arbitration at issue here was not a foreign arbitration. The arbitration was conducted between Ford, a Delaware Corporation with its principal place of business in Michigan, and Gerling, a German insurer. But Gerling is not the real party in interest. The real party in interest is National Indemnity Company ("NICO"), a Nebraska corporation with its principal place of business in Omaha, Nebraska, which acquired Gerling's interest in the insurance policies at issue pursuant to a Loss Portfolio Transfer agreement, signed on December 27, 2007 and retroactively effective as of September 30, 2007, attached hereto as Exhibit 8. The situs of the arbitration is Michigan and it is governed by Michigan substantive law. The arbitration has none of the indicia of a foreign arbitration and is thus not within the scope of 9

U.S.C. § 201, *et seq.  See, e.g.*, *Ling v. Deutsche Bank AG*, No. 4:05-cv-345, 2005 U.S. Dist. LEXIS 31734, at **16–22 (E.D. Tex. Nov. 23, 2005) (holding that a dispute was not within the ambit of 9 U.S.C. § 202 because the agreement did not (1) "involve property located abroad; (2) envisage performance abroad; or (3) have some other reasonable relationship with one or more foreign states," even though one of the parties' parents was a German corporation, noting that "United States law was applicable to the agreements and arbitration was to take place before domestic entities. Any relationship to any foreign state is attenuated, at best, but certainly not reasonable.").[2]

Because the parties did not agree that the arbitration award could be confirmed, this Court lacks authority to do so and Ford respectfully requests that the petition be dismissed.

### III.  Alternatively, The Award Should Be Vacated Because The Arbitrators Committed A Manifest Disregard for the Law

The FAA provides that an award should be set aside if an Arbitration Panel exceeds its powers.  9 U.S.C. § 10(4).  Courts have consistently held that an Arbitration Panel exceeds its powers if it commits a manifest disregard for the law.  *Abu Dhabi Inv. Auth. v. Citigroup, Inc.*, 557 F. App'x 66, 67 (2d Cir. 2014) ("An arbitration award may be vacated if it results from the arbitrators' manifest disregard of the law or if the arbitrators exceeded their powers.").  The same standard of review applies to proceedings under 9 U.S.C. § 207.  *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" US, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) ("The Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to

---

[2] Although the Second Circuit has stated that the Convention "governs *agreements* that are 'commercial and ... not entirely between citizens of the United States.'" *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 (2d Cir. 2011) (emphasis added), it does not appear to have confronted the issue here: whether the presence of a foreign nominal party to an agreement, who no longer has any stake in the disputed *commercial relationship* between citizens of the United States, with no other foreign connection, renders the arbitration foreign and subject to the Convention.  *See ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 890 F. Supp. 2d 912, 926 (N.D. Ill. 2012) (noting that few courts have considered this distinction and holding that 9 U.S.C. § 202 renders an arbitration foreign only when "a non-U.S. citizen is a party to the *commercial relationship*," and not merely a nominal party to an agreement or award (emphasis added)).

11

set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief.").[3]  Further, under the Convention, confirmation under § 207 is forbidden if the Court "finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  Those grounds include circumstances where, "[t]he recognition or enforcement of the award would be contrary to the public policy of [the country where enforcement of the award is sought]."  21 U.S.T. 2517 at Article V (2)(b); *Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 661 (2d Cir. 2005) ("Article V(2) of the Convention provides that a United States court is not required to enforce an agreement if its subject matter is not capable of arbitration in the United States, or if enforcement of the arbitral award would be contrary to American public policy.") (citations omitted).  The public policy of the United States with respect to the circumstances under which an arbitration award cannot be enforced is embodied in 9 U.S.C. § 10.  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008).  Enforcement of an award in which the arbitrators committed manifest disregard of the law violates that policy, and thus the standard is the same whether Gerling proceeds under 9 U.S.C. § 9 or 9 U.S.C. § 207.  *See also Telenor Mobile Commc'ns AS v. Storm LLC*, 524 F. Supp. 2d 332, 344 (S.D.N.Y. 2007) (applying the manifest disregard for the law standard in the context of a confirmation proceeding under 9 U.S.C. § 207 as "a non-statutory defense to enforcement").

---

[3] The Second Circuit case of *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 92 (2d Cir. 2005), which held "[t]hat an arbitration panel exceeded its powers is not, however, one of the seven exclusive grounds for denying enforcement under the New York Convention," is not to the contrary.  *Encylopaedia Universalis* involved "an action to confirm an award rendered in . . . a foreign jurisdiction," Luxembourg, and relied on *Yusuf*, which announced both this proposition and the one that controls our case: "the Convention . . . allow[s] a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this case the FAA, to a motion to set aside or vacate that arbitral award."  126 F.3d at 21–25 (reviewing such an award for manifest disregard of the law).  As this arbitration was conducted in the United States, applying Michigan law, the bases for vacatur provided in the FAA apply.

In the Second Circuit, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. N.Y. 1986). Here the panel correctly stated the law, but elected not to follow it.

The primary issue addressed in the Award is whether Ford's "batch" insurance claims were excluded from coverage under the Gerling policies by the language of Exclusion L.[4] The arbitration panel found that the controlling language in Exclusion L is ambiguous. *See* Tribunal Order No. 1, attached hereto as Exhibit 9, at 25. It then convened a hearing to consider extrinsic evidence.

In the resulting Award, the arbitrators correctly state the substantive Michigan law applicable to the construction of Exclusion L.

> The parties agree that Michigan law governs this dispute. It requires that a contract be construed to effectuate the intent of its parties. Intent is determined from the language and context of the agreement's provisions, and "in light of the circumstances existing at the time." *Sobczak v. Kotwicki*, 347 Mich. 242, 249 (1956). The relevant intent must be mutual: "To say, as we do, that a contract requires a 'meeting of the minds' is only a figurative way of saying there must be mutual assent. This we judge by an objective standard, looking to the expressed words of the parties and their visible acts." *Goldman v. Century Ins. Co.,* 354 Mich. 528, 535 (1958). The Tribunal must be governed in determining intent "by what the parties said and did, and not merely by their unexpressed subjective intent." *Fletcher v. Bd of Ed. of Sch. Dist. Fractional No. 5*, 323 Mich. 343, 348 (1948).

Award at 4.

The arbitration panel further ruled that in the absence of evidence of mutual intent, the contract must be construed in Ford's favor.

> Ford is correct that the doctrine of *contra proferentem* is theoretically applicable here. The Tribunal assumes that Exclusion

---
[4] A "batch" claim is one of a group of related product liability claims arising from the same alleged defect.

13

> L should be construed against the insurer under Michigan law, and that even though it is clear that Marsh drafted the contract the Tribunal should treat the policy as having been drafted by Gerling in light of the policy's provision instructing that Gerling should be regarded as the author.

Award at 23. The panel's recitation of Michigan law was correct. Michigan law is also clear that it was Gerling's burden to prove Ford's claims were excluded. *Hess v. Preferred Masonic Mut. Accident Assoc. of Am.*, 112 Mich. 196, 203-04 (1897) ("when the assured has shown the injury to be the result of an accident, the burden is then upon the defendant to show, by way of defense, that the accident was within the exceptions"); *see also Heniser v. Frankenmuth Mut. Ins.*, 449 Mich. 155, 161 n.6 (1995) ("the insured bears the burden of proving coverage, while the insurer must prove that an exclusion to coverage is applicable") (quoting *Arco Indus., v. Am. Motorists Ins. Co.*, 448 Mich. 395, 424-425 (1995) (Boyle, J., concurring)).

Despite correctly stating the applicable law, the panel failed to properly apply it. After considering the extrinsic evidence, the panel did not find evidence of a mutual intent to exclude the claims at issue from coverage.

> *[Ford's negotiator Doug] Stenske may have had the intent he claims to have had* [i.e., that the batch claims were covered] (Tr. 976), but he did not convey that intent to Marsh or to Gerling. Ford in fact confirmed to Marsh on December 4, 1995 that Bacon's draft of Exclusion L (accepting Gerling's terms) was consistent with Stenske's revised version faxed to Marsh on November 15. (See Gerling Post-Hearing Brief, p.38.) Consequently, just as the parties understood that Exclusion L would have been limited by the words "and collectible under," Gerling (and Marsh as Ford's agent) understood that deleting those words would restore Exclusion L to its originally intended breadth. Under these circumstances, Stenske could not alter this understanding by unilaterally concluding that "insured by" was broad enough to preclude the exclusion of claims that proved uncollectible – i.e., that "insured by" meant "and collectible under" – without communicating that position to Gerling.

14

Award at 20 (emphasis added).  Thus, the Panel found that the parties understood the meaning of "insured by" differently.  There was no mutual intent as to the very language the panel had found ambiguous.

The panel found from the extrinsic evidence that Ford may have had an intent to obtain the coverage for the batch claims, whereas Gerling had a different intent.  In other words, the extrinsic evidence failed to resolve the ambiguity in Exclusion L.  Yet rather than apply the very Michigan law it had recited, which would require construction of Exclusion L in Ford's favor, the panel construed the provision in favor of Gerling.

The panel's construction evinced a manifest disregard for the law.  It manufactured a rule that Ford had a duty to inform Gerling of Ford's understanding of the policy language.  Having found factually that Exclusion L was ambiguous and that the parties had, contemporaneously with its execution, a different understanding of what Exclusion L meant, Michigan law required the panel to construe the provision in favor of coverage.  The panel acted with manifest disregard for the law when it chose to disregard Michigan law rather than rule for Ford in light of the ambiguity.  There is no question that the arbitrators knew what Michigan law was on this point, and no question that they chose to disregard it.

For each of these reasons, Ford respectfully requests that the award be vacated.[5]

## Conclusion

For the above reasons, Ford respectfully requests that the Court dismiss the petition or in the alternative to vacate the arbitration award.

---

[5] Ford seeks this relief in the alternative.  Because the issues between the parties are not fully resolved, the better approach is to dismiss for lack of ripeness.  Should the Court decline Ford's motion, Ford requests that the July 9, 2014 version of the Partial Final Award be vacated.

Dated: September 30, 2014                    Respectfully Submitted,

    /s/_____

Peter Fazio (1211)
E-mail: pjfazio@arfdlaw.com
Aaronson Rappaport Feinstein & Deutsch, LLP
600 Third Avenue
5th Floor
New York, NY 10016
Tel: (212) 593-5458
Fax: (212) 593-6970

J. Tracy Walker (Va. Bar No. 31355)
(admitted *pro hac vice*)
E-mail: twalker@mcguirewoods.com
H. Carter Redd (Va. Bar No. 34392)
(admitted *pro hac vice*)
E-mail: hredd@mcguirewoods.com
Matthew D. Fender (Va. Bar No. 76717)
(admitted *pro hac vice*)
E-mail: mfender@mcguirewoods.com
McGuireWoods LLP
One James Center
901 E. Cary St.
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061

*Counsel for Ford Motor Company*

**Certificate of Service**

      I certify that on September 30, 2014, I caused a true and correct copy of the foregoing pleading to be filed on the Court's CM/ECF system, which will cause a Notice of Electronic Filing (NEF) to be sent to the following counsel for Petitioner HDI-Gerling Industrie Versicherung AG:

        Jane M. Byrne
        J. Toji Calabro
        Michael Barry Carlinsky
        Richard Corey Worcester
        Renita Sharma
        Quinn Emanuel Urquhart & Sullivan LLP
        51 Madison Avenue
        New York, NY 10010

        PETER J. FAZIO/S/
        Counsel